UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| LINDSEY JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>MAYVILLE STATE UNIVERSITY,<br><br>Defendant. | Case No.<br><br><br><br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiff, Lindsey Johnson, by and through her attorneys, and for her cause of action hereby states the following:

## INTRODUCTION

1. This is an action against Mayville State University for gender discrimination and retaliation in violation of Lindsey Johnson's rights protected by state and federal law.

2. This action is brought to redress Lindsey Johnson's rights under Title VII and the Equal Pay Act.

3. Lindsey Johnson was treated less favorably and held to higher standards than her male counterparts.

4. Lindsey Johnson raised concerns regarding gender and pay discrimination to Vice President of Business Affairs Amber Hill and Athletic Director Jay DeCann.

5. Rather than investigate her concerns, Mayville State University fired Lindsey Johnson.

1

## PARTIES AND JURISDICTION

6. Plaintiff Lindsey Johnson ("Coach Johnson") is a resident and citizen of Mayville, North Dakota.

7. Coach Johnson is female.

8. Defendant Mayville State University ("MSU") is located in Mayville, North Dakota.

9. The acts of which Coach Johnson complains occurred in Mayville, North Dakota.

10. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and the Court's pendent claim jurisdiction under 28 U.S.C. Section 1367(a).

11. Venue is appropriate in this District under 28 U.S.C. Section 1391(b) and (c).

## PROCEDURAL REQUIREMENTS

12. Prior to filing this action, on October 2, 2023, Lindsey Johnson filed charges of employment discrimination on the basis of gender and retaliation against Defendant with the Equal Employment Opportunity Commission.

13. Lindsey Johnson obtained a Right to Sue letter from the Equal Employment Opportunity Commission on October 7, 2024.

## FACTUAL BACKGROUND

14. Coach Johnson was hired as the Head Volleyball Coach and Part-Time Faculty Assistant Professor by Mayville State University in March of 2008.

15. Coach Johnson was eventually promoted to Part-Time Assistant Professor while still retaining her head coaching duties.

2

16. Coach Johnson's job duties included overseeing and supervising the Women's Volleyball team and teaching MSU students.

17. Her time was supposed to be divided that she was coaching volleyball 50% of her time and teaching students the other 50% of her time.

18. As coaching volleyball is a full-time job, having these additional teaching duties was challenging.

19. Coach Johnson balanced her duties well and received positive feedback from both her students and direct supervisors.

20. Coaches of male teams and coaches of female teams have substantially the same job requirements and perform substantially equal work.

21. The gender of the sports team the coach is coaching does not make a difference in how much work is required by the coach as the job duties are substantially similar.

22. In the spring of 2023, Billy Tomblin ("Coach Tomblin") was hired as MSU's head baseball coach.

23. Coach Tomblin's starting salary as a first-year collegiate head coach was $60,000, and he had twenty-five percent teaching duties

24. In contrast, during her final year at MSU, Coach Johnson's salary was $52,000 with fifty percent teaching duties.

25. Coach Johnson had been with the school for 20 years, four years as a student athlete, one year as a student coach, and then 15 years as a head coach.

26. In March of 2023, Coach Johnson approached Athletic Director Jay DeCann ("AD DeCann") with concerns about MSU's coaching staff workload disparities based on gender.

27. Coach Johnson and AD DeCann had subsequent meetings in which Coach Johnson raised concerns about the pay disparity between her and Coach Tomblin.

28. AD DeCann informed Coach Johnson he did not have authority to make decisions regarding pay and referred her to Vice President of Business Affairs Amber Hill ("VP Hill").

29. In mid-to-late April of 2023, Coach Johnson complained to VP Hill about Coach Tomblin, male, being paid more money and doing less work than her.

30. Coach Johnson asked about reducing her teaching responsibility and stated to VP Hill that the only coaches who taught at fifty percent were the female coaches, while the male coaches had lesser teaching duties.

31. The only two females coaching at MSU were Coach Johnson and her assistant volleyball coach Michelle Meiklejohn.

32. The two female coaches at MSU were required to carry double the teaching load of their male counterparts.

33. A first-year male head coach was being paid more to do less work than the veteran female head coach.

34. During her meeting with VP Hill, Coach Johnson requested that her salary be increased to $60,000 and her teaching duties reduced to twenty-five percent.

35. VP Hill told Coach Johnson that they "would see what happens when the contracts come out" at the end of June.

36. During this conversation, VP Hill also shared that there were a lot of "inequities" on MSU's campus.

37. Coach Johnson did not hear anything further regarding her contract or her request to have her pay increased.

38. Instead, she received an email in late March or early April from AD DeCann, in which he said her yearly performance evaluation would be completed by April 28, 2023.

39. By May 3, 2023, Coach Johnson had not heard anything further regarding her performance evaluation.

40. On or around this time, Coach Johnson asked when evaluations would be done and was told that they would let her know.

41. On May 25, 2023, Coach Johnson was informed that her contract would not be renewed due to a list of alleged "ongoing behaviors."

42. Coach Johnson was never informed of what any of these behaviors were, and when she asked for specifics regarding the alleged behavior, she was told that she could request her personnel file.

43. Coach Johnson requested her personnel file.

44. She had to request her personnel file three separate times and was told all three times that it was not ready.

45. Coach Johnson went into the office on June 6, 2023, and stated she was not leaving until she had a copy of her personnel file.

46. The only objectively negative document within her personnel file was a "Below Expectations" evaluation from that year.

47. This evaluation was signed and dated by AD DeCann on May 20, 2023—five days before Coach Johnson's non-renewal.

48. Coach Johnson had never seen this document before.

49. The review improperly and wrongfully accused Coach Johnson of behavior she had not engaged in, including that she was aggressive, inappropriate, and had trouble separating her personal feelings from her professional responsibilities.

50. Coach Johnson never had an opportunity to dispute or explain anything in this document, because Defendant refused to show it to her.

51. The performance review also improperly and wrongfully alleged that Coach Johnson instructed her volleyball team to not attend the men's basketball games.

52. Coach Johnson did not discourage her team from attending the games.

53. Furthermore, other coaches did not attend the women's volleyball games.

54. No male coaches were written up for not attending volleyball games.

55. This review also improperly and wrongfully accused Coach Johnson of being unwilling to speak to certain colleagues, without identifying the colleagues they accuse her of not speaking to.

56. However, Coach Johnson had respectful working relationships with her colleagues, and did not purposely avoid any of her colleagues.

57. The performance evaluation form stated that if the overall rating of the review is "Below Expectations," then a performance improvement plan must be put in place.

58. In violation of Defendant's own policies, Coach Johnson was never informed about the behavior referenced in the performance review, and she was never given an opportunity to dispute it or correct it.

59. In her 15 years as Head Coach at MSU, Coach Johnson had never received, nor had she ever been placed on a performance improvement plan.

60. On June 9, 2023, Coach Johnson filed a grievance with MSU.

61. MSU claimed it released Coach Johnson based on complaints that she was creating a hostile work environment, yet MSU did not inform Coach Johnson of these concerns nor did MSU put her on a performance improvement plan as is protocol for coaches.

62. MSU does not fire male coaches for being aggressive, but fired a female coach for being aggressive.

63. MSU does not fire male coaches for not attending volleyball matches, but fired a female coach for not attending men's basketball games.

64. MSU does not fire male coaches because they avoided speaking to a colleague, but fired a female coach for not speaking with a colleague.

65. MSU does not fire male coaches who ask for a raise, but fired a female coach for asking for a raise.

66. MSU provides male coaches with performance related materials and affords the male coaches the right to review, respond, explain, and dispute any performance related concerns, but did not provide a female coach with the materials or the right to review, respond, explain, and dispute performance related concerns.

67. MSU paid a male coach more money to do less work than a veteran female coach who had been successfully employed for 15 years.

68. Coach Johnson and the one other female coach were expected to spend twice as much of their time teaching than similarly situated male coaches.

## COUNT I
## VIOLATION OF TITLE VII
## SEX DISCRIMINATION AND RETALIATION

69. Coach Johnson re-alleges the preceding paragraphs as if fully set forth herein.

70. Coach Johnson has satisfied all administrative requirements and conditions precedent for bringing suit under Title VII on this claim.

71. Under the provisions of Title VII, it is unlawful for an employer to discriminate against an employee on the basis of sex or to retaliate against her for engaging in activity protected by Title VII.

72. At all times, Defendant was an "employer" within the meaning of Title VII.

73. MSU's conduct was discriminatory against Coach Johnson with respect to failing to treat her equally to male coaches, allowing her to be discriminated against by her supervisors, subjecting her to different and heightened scrutiny at work, holding her to different and higher standards, paying her less than male coaches, and retaliating against her for engaging in conduct protected by Title VII, in violation of Title VII.

74. Defendant discriminated against Coach Johnson on the basis of gender in violation of Title VII by holding her to a different standard than similarly-situated men in the terms and conditions of her employment, including but not limited to:

   a. Coach Johnson's contract renewal;

   b. Coach Johnson's evaluation;

   c. Coach Johnson's alleged discipline; and

   d. Coach Johnson's termination.

75. Defendant retaliated against Coach Johnson after she complained about being treated differently as a female coach, that her wages were lesser than a male coach, that she was required to do more work than a male coach, that she sought a raise and asked that her job duties be lessened commensurate with the male coach by failing to renew her contract, providing her a false evaluation and false discipline, and terminating her employment.

76. As a proximate result of MSU's actions, as outlined above, Coach Johnson has in the past and will in the future suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, physical harm, lost wages and benefits, and lost earning capacity.

77. MSU acted with reckless indifference and willful and wanton disregard to Coach Johnson's federally protected rights.

78. The actions of MSU also require the imposition of specific equitable and injunctive relief necessary to enforce the mandates of Title VII including, but not limited to: a) reinstatement of Coach Johnson to her position as head coach or front pay, b) a court order requiring that Mayville State University be audited regarding its compliance with Title VII and that any failures or violations of Title VII be immediately remedied by Mayville State University, c) that MSU pay female coaches fairly in comparison to male coaches, d) that MSU stop requiring female coaches to engage in more work than male coaches, and e) such other and further relief as Title VII and the need to make Coach Johnson and other females similarly situated at Mayville State University whole require.

## COUNT II
### VIOLATION OF THE EQUAL PAY ACT ("EPA")
### UNEQUAL PAY BASED ON GENDER AND RETALIATION

79. Coach Johnson re-alleges the preceding paragraphs as if fully set forth herein.

80. Coach Johnson is an employee and MSU is an employer for the purposes of the definition set forth in 29 U.S.C. § 206.

81. 29 U.S.C. § 206 prohibits an employer from discriminating between employees on the basis of sex, including paying employees a lower rate than is paid to employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions…"

82. Coach Johnson was paid wages at a rate less than the rate MSU paid its similarly situated male coaches.

83. Coach Johnson was required to engage in more work by having a higher teaching load than similarly situated male coaches.

84. Coach Johnson's job with MSU required equal skill, effort, and responsibility, and was performed under similar working conditions, as the jobs held by her similarly situated male counterparts.

85. Coach Johnson complained about not being paid similarly to the new male baseball coach, sought a raise and asked for less teaching responsibility commensurate with the male baseball coach, and was subsequently fired for her complaints of unequal pay in violation of the retaliation provision of the EPA, 29 U.S.C. 215(a)(3).

86. As a result of MSU's violation of the Equal Pay Act, Coach Johnson is entitled to recovery of her unpaid wages, an additional amount as liquidated damages, and recovery of her reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiff Lindsey Johnson demands judgment against Defendant and in an amount which will fully and fairly compensate her for her injuries and damages, for lost wages and benefits, for liquidated damages, for emotional distress damages, for punitive damages, for equitable relief, for attorneys' fees and costs, for interest and costs as allowed by law, and for such further relief as is just and consistent with the purposes of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act.

(THIS SPACE INTENTIONALLY LEFT BLANK)

## JURY DEMAND

COMES NOW Lindsey Johnson and hereby requests a trial by jury in the above- captioned matter.

/s/ Jill M. Zwagerman
NEWKIRK ZWAGERMAN, P.L.C.
Jill M. Zwagerman  AT0000324
*(pro hac vice-admission pending)*
jzwagerman@newkirklaw.com
Jacque Judickas AT0015272
*(pro hac vice-admission pending)*
jjudickas@newkirklaw.com
3900 Ingersoll Ave., Suite 201
Des Moines, IA  50312
Telephone:  515-883-2000
Fax:  515-883-2004

Leo FJ Wilking (ND 03629)
Wilking Law Firm
3003 32nd Ave S., Suite 240
Fargo, ND 58103
Phone: (701) 356-6823
Fax: (701) 478-7621
*lwilking@wilkinglaw.com*

ATTORNEYS FOR PLAINTIFF

Original filed.